## Smith v. Southern Bell Telephone & Telegraph Co.

(Decided April 20, 1937.)

(As Modified on Denial of Rehearing May 11, 1937.)

W. W. BARRETT for appellant.

J. J. MOORE, HENRY J. SCOTT and TRABUE, DOOLAN, HELM & HELM for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

W. Taulbee Smith, circuit court clerk of Pike county, Ky., sued the Southern Bell Telephone & Telegraph Company, doing busines in Pikeville, Pike county, Ky., to compel it to furnish service to his public office in the following manner:

> "(1) Telephone service confined to Pikeville exchange, with no toll calls either inbound or outbound, or

> "(2)    Both exchange and toll service,—exempting him, however, from liability for tolls on inbound or outbound calls unless the Telephone Company shall first make sure that plantiff consents to pay tolls on such calls."

Appellee raised the question by proper pleadings that the Kentucky Public Service Commission authorized by chapter 145, Acts of 1934, pages 580-613 (Ky. Stats., secs. 3952-1 to 3952-61), prescribes a full and complete code of laws regulating and fixing schedules, services, rates, charges, practices, rules and regulations, as to the operation of utility companies, including telephone and telegraph companies; that the schedules, services, rates, charges, practices, rules, and regulations, under which the company was operating, had been approved and fixed by the commission; that the primary and exclusive jurisdiction over the regulation and supervision of the services, rates, rules, etc., had been, by the terms of the act conferred upon the commission, and full, complete, and ample remedies are given by the act; that the act provided for an adequate court review of the commission's orders, acts, etc.

It occurs to the court if the primary jurisdiction is in fact in the commission, that question should be first decided.

The Public Service Commission is an administrative agency set up and appointed by law for the purpose of hearing the facts and establishing reasonable rules, rates, and services to the public in order to secure conformity of services and rates affecting all classes of customers, because for this burden to fall exclusively on the courts and to give the courts the primary and exclusive jurisdiction to pass upon the reasonableness of the rules, services, rates, schedules, practices, etc., of the telephone and telegraph companies, would lead to confusion and uncertainty, because the result might be that one court would say that certain rules and regulations are unreasonable, and another court might regard the same rules reasonable; consequently, a subscriber of the same class in one locality might obtain one kind of service and the same service be denied a subscriber at another place.

No one is denied his day in court, because the right of review is adequately provided for by the act under section 3952-44, which reads as follows:

"*Court review.*—Any party to a proceeding before the commission, or any utility affected by an order of the commission, may within twenty days after service upon it of the commission's order or

from the time when the commission has failed to act within the period prescribed in Section 6 (d), * commence an action in the circuit court for Franklin County or any other court of competent jurisdiction against the commission as defendant to vacate or set aside such order or determination on the ground that it is unlawful or unreasonable.

"If a petition for rehearing has been made as provided in Section 6 (d) * of this act, the right to commence an action against the commission shall be continued for a period of twenty days from the service of the final order in such rehearing upon the party desiring to commence the action. (1934, c. 145, sec. 7 (a) Eff. June 14, 1934.)

"*Sec. 3952-36."

The subject of services, rates, practices, rules, and regulations is so complicated and oftentimes so fraught with difficulties and varying circumstances that the business of the country has made it wise for the Legislature to enact such laws prescribing a system of regulation and supervision of public utilities such as telephone and telegraph companies, making it necessary to give the commission the primary authority and jurisdiction to hear complaints, receive and hear testimony of witnesses, and the power to fix reasonable regulations of toll and exchange service, as has been done in the instant case, a violation of such rules by the company in serving the public being subject to heavy fines and penalties.

In the case of Southern Bell Telephone & Telegraph Co. v. City of Louisville, 265 Ky. 286, 96 S. W. (2d) 695, 696, the court said:

"The commission was given jurisdiction over certain utilities enumerated in the act, including telephone and telegraph companies, and was empowered to fix just and reasonable rates after a hearing upon reasonable notice, its findings to be subject to judicial review. Subsection (n) of section 4 of the act empowers the commission, after a hearing has been had in the manner prescribed in the act, 'to enforce, originate, establish, change and promulgate any rate, rates, joint rates, charges, tolls, schedules or service standards of any utility,

subject to the provisions of this act, that are now fixed or that may in the future be fixed, by any contract, franchise or otherwise, between any municipality and any such utility, and all rights, privileges and obligations arising out of any such contracts and agreements regulating any such rates, charges, schedules or service standards, shall be subject to the jurisdiction and supervision of the commission.' That it was the intention of the Legislature to clothe the Public Service Commission with complete control over rates and services of the utilities enumerated in the act is evidenced by the concluding paragraph of section 4, which reads:

" 'Nothing in this section or elsewhere in this act contained is intended or shall be construed to limit or restrict the police jurisdiction, contract rights, or powers of municipalities or political subdivisions, except as to the regulation of rates and service, exclusive jurisdiction over which is lodged in the Public Service Commission.'

"Every utility subject to the regulation of the commission is required to file with the commission a schedule showing all rates then being collected, and is required to adhere to such schedule until a change is authorized by the commission after hearing as provided for in the act."

We also said in the above case, supra, that the authority to regulate rates and modes conducting the business of public utilities is primarily a legislative function of the state, and the right is a police power. Home Telephone & Telegraph Co. v. Los Angeles, 211 U. S. 265, 29 S. Ct. 50, 53 L. Ed. 176; Milwaukee Electric Ry. & Light Co. v. Railroad Commission, 238 U. S. 174, 35 S. Ct. 820, 59 L. Ed. 1254.

Section 3952-33, Kentucky Statutes, prescribes the proceeding to be followed when a change in rates and services are sought, and this procedure must be followed by all who are permitted to make complaints. If any service is unreasonable or inadequate, complaints must be made as provided by the section, or the commission may proceed on its own motion.

It is true that it is provided that as many as ten persons, who are customers of the telephone company

must make a complaint, which we think is a reasonable regulation, for to permit one person to do so, or a less number than ten, the commission would be subjected to the whims and imaginative grievances of customers to such an extent that it would be so annoying that the intent and purpose of the law would be virtually destroyed, and the service to the general public would be thwarted if not destroyed. The requirement that the application shall be made by as many as ten is not unreasonable when the question involved affects all patrons of the involved utility, as is true here, since in that case any single patron would have but little or no trouble in obtaining the remaining nine to join him in demanding relief before the Commission.

The court is of the opinion that the primary jurisdiction and authority to fix rates, establish reasonable regulation of service, and to alter and make changes to said regulations and to make investigation as to any change in service as is sought by appellant in the case at bar, is exclusively and primarily in the commission, but is subject, however, to review, or a rehearing as provided by sections 3952-36 and 3952-44 of the Statutes.

We think the Legislature had the authority to invest some discretion in the commission as the representative of the public in the number of persons necessary to make a complaint and also to state that the number of ten was reasonable to make said complaint, because to give a single subscriber the authority to make the complaint would lead to confusion as well as unnecessary annoyance and might affect the duties and purposes of the commission in representing the best interest of the subscribers of the telephone company. If, in fact, any single subscriber had a real and substantial ground or reason for complaint, the act authorizes the commission, of its own motion, acting in the interest of the public and the individual subscriber, to hear the complaint and after due investigation and hearing, to correct any unreasonable situation that might exist. However, the statute does not make it mandatory for the commission to hear the complaint of a single subscriber. To do so, might cripple and affect the efficiency of the commission, as it applies to the subscribers in general of the telephone company. It is not in violation of the Constitution to make this limitation, because such limitation deprives no one of their rights in the

final analysis to have their day in court, because the right of review is given by the act.

It is insisted that the act is unconstitutional and in violation of section 14 of the Constitution of Kentucky, which provides that:

"All courts shall be open and every person, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

Counsel insists that the act is unconstitutional on the theory that it deprives appellant of some inherent property right; that it is also in violation of sections 2, 3, 29, and 109 of the Constitution of Kentucky. We are unable to agree with counsel. The right to telephone service is not inherent, nor is it a natural right. This right is not the same as his rights to life, liberty, or property. Appellant's right to telephone service comes to him by virtue of the law. He is a member of society and his rights must be consistent with society as a whole. Appellant is not entitled to telephone service on the same ground as he is to the right of life, liberty, and property in contemplation of the Constitution. While every man is entitled under section 14 of the Constitution to a remedy by due course of law, in any event, the question is always as to the nature and extent of that right. The law defines and regulates his rights and prescribes the remedy for him before the commission, which is a remedy by due course of law when appeal to the court is given; the right to telephone service under the common law is subject to change by the Legislature. When certain conditions exist, the Legislature may, through the commission, set up the manner and method of the regulation of telephone service, it being a public carrier, and may authorize the commission to hear evidence, fix and establish regulations, charges, rates, and services to be rendered to subscribers of the general public. The courts cannot compel or control the exercise of legislative functions within constitutional limitations. The legislative right to establish agencies, such as commissions, has never been questioned. For many years, boards or commissions have been operating in the state and much longer in the nation. We have what is known as the Kentucky Railroad Commission,

Workmen's Compensation Board, and for many years we had what is known as the Prison Commission, the Election Commission, and many others. The federal government has now an Interstate Commerce Commission, which was established in the year 1887; a Federal Trade Commission, a Shipping Board Commission, and possibly others. In fact, practically every state in the Union now has laws creating utility commissions with substantially the same powers as those vested in the Kentucky Public Service Commission, under consideration, which give in almost every instance full and primary jurisdiction over the schedules, rates, services, rules, and regulations of public utilities.

We see nothing in this act that deprives appellant of his life, liberty, and property without due process of law, nor is he deprived of the equal protection of the law, as provided by section 1 of Amendment 14 of the Constitution of the United States. The act provides for review in court from the decision of the commission, section 3952-44, Kentucky Statutes. The rights vouchsafed to him by the Constitution are those natural rights, which include the right of personal liberty, the right of personal security, and the right to acquire and enjoy property. Such rights, however, are not absolutely indefeasible, but are so only or until some law is passed, which requires their surrender in consideration of the public welfare. Southern Express Co. v. Whittle, 194 Ala. 406, 69 So. 652, L. R. A. 1916C, 278; Schaake v. Dolley, 85 Kan. 598, 118 P. 80, 37 L. R. A. (N. S.) 877, Ann. Cas. 1913A, 254; Com. v. Mutual Union Brewing Co., 252 Pa. 168, 97 A. 206.

Personal liberty means in the constitutional sense a liberty regulated by law. It does not mean the absolute and unrestrained right to do as one pleases. The right of the individual is subject to reasonable restraint by general law for the common good. Hall v. Geiger-Jones Co., 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann Cas. 1917C, 643.

We are of the opinion that the commission has primary jurisdiction and authority to pass upon the rates, charges, services, and whether same are reasonable or unreasonable, and to hear evidence to that effect; and that the act, itself, is in no respect in opposition to the Constitution of Kentucky, or the Constitution of the

United States, or any part thereof. We, therefore, find it improper for the court to pass upon the reasonableness of the charges or service complained of by appellant. We find no error in the judgment of the lower court.

Wherefore, the judgment is affirmed. Whole Court sitting.